# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUNICE ALCAZAR, | CASE NO. 1:05-cv-0706 AWI TAG |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| vs. | |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Eunice Alcazar ("Claimant" or "Plaintiff") seeks judicial review of an administrative decision denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 et seq. Pending before the Court is Plaintiff's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Plaintiff filed her complaint on May 24, 2005, and her opening brief[2] on January 6, 2006. (Docs. 1, 12). On February 8, 2006, the Commissioner filed his opposition to the appeal. (Doc. 13). Plaintiff filed a reply brief on February 28, 2006. (Doc. 14).

## JURISDICTION

On March 5, 2003, Claimant filed an application for DIB, signed and dated February 27,

---

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

[2] Claimant refers to her opening brief as a motion for summary judgment and, in her reply brief, states that she is responding to the Commissioner's cross-motion for summary judgment. (Docs. 12, 14). Although briefs filed in Social Security cases previously were deemed summary judgment motions, for several years this Court has termed the documents as "opening briefs," "responses" or "oppositions," and, "reply briefs." This Magistrate Judge's Findings and Recommendations continues this trend.

1

2003, alleging an onset date of May 2, 2002. (Administrative Record ("AR") 77-80, 86). The application was denied initially and on reconsideration. (AR 49-53, 58-59).

After timely requesting a hearing, Claimant and her counsel appeared before Administrative Law Judge ("ALJ") James E. Ross on November 3, 2004. (AR 72, 28-98). On November 24, 2004, the ALJ issued a written decision finding that Claimant was not disabled. (AR 11-21). The Appeals Council denied Claimant's request for review on April 5, 2005. (AR 6-8). The ALJ's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court, pursuant to 42 U.S.C. § 405(g). The initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeal Council's decision. 42 U.S.C. § 405(g). On May 24, 2005, Claimant timely filed this action. (Doc. 1).

## STATEMENT OF FACTS

The relevant facts relevant have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs filed by the Plaintiff and the Commissioner, and only will be summarized here. To the extent necessary, additional facts will be addressed in this Court's analysis.

At the November 3, 2004, administrative hearing, Claimant testified that she was born on September 26, 1975, making her 29 years old. (AR 31). She further stated that she had completed high school and that she possessed a valid driver's license, which she used. (AR 31-32). Claimant reported that she lives with her husband, who works in the fields, and their six-year-old daughter. (AR 39, 45).

Regarding her work history, Claimant stated that she last worked in July 2002 at Blockbuster Video ("Blockbuster"). (AR 32). Claimant explained that she had worked at Blockbuster in 2000, took one year off to undergo surgery, then returned and worked for another year before symptoms related to degenerative disks, including numbness in her right leg, necessitated that she stop working. (AR 32). With respect to her impairments, Claimant testified that she currently has two degenerative disks, since the third one was removed during a surgical procedure in October 2000, which she believes involved a laminectomy, after which the bones were fused together. (AR 33). In response to her attorney's question, Claimant testified that she could not work at the present time because, since her surgery, she still has two degenerative discs. (AR 33). According to Claimant, the

numbness in her left leg improved a great deal after the surgery, but she began experiencing problems again approximately one year after she returned to Blockbuster. (AR 34). An MRI revealed that she had problems with a second disk, for which she will have surgery in a year. (AR 34, 46). She also anticipates a third surgery in the future. (AR 46). Claimant testified that she underwent a diagnostic procedure in September that involved the injection of dye into her spinal cord, and she has suffered severe headaches since having that test, which her general practitioner said was because of her severe arthritis. (AR 35-36). The September procedure was to ascertain the severity of the scar tissue from the previous surgery, which itself was causing her problems. (AR 44).

Claimant stated that, on a scale of one to ten, her daily pain was a seven. (AR 37). She described her regular symptoms, which, in addition to frequent headaches, included weakness and shakiness in her left leg; knee pain; numbness in two toes; an unbalanced feeling; the inability to walk more than fifteen minutes; shooting pain up her spine when she sits; chronic, throbbing leg pain; and the inability to bend or pick things up. (AR 32, 36-37, 42). When her toes are numb, the sensation occasionally travels into her calves. (AR 41). Further, Claimant leans toward her right side. (AR 43). As to her exertional capacity, Claimant testified that she avoids lifting anything, but can lift less than five pounds. (AR 39). She stated that she cannot kneel, stoop, or squat without pain. (AR 39).

To help with her myriad symptoms, Claimant reported that she takes Neurontin, ibuprofen, Ultracet, and Darvocet, which make her feel sleepy and drowsy, cause her arms and hands to shake, and generally make her feel "totally out." (AR 37-38, 44-45). In addition, the medications sometimes make her dizzy and upset her stomach. (AR 46). Claimant added that the throbbing stops for a while if she lays down with her legs elevated. (AR 38-39).

Regarding her daily life activities, Claimant testified that she tries to alternate between standing, walking for fifteen minutes if tolerable, sitting for fifteen minutes, and laying down. (AR 39, 43). She added that her doctor told her that she should walk. (AR 41). Claimant further testified that she washes dishes, cooks, and does the laundry, with her husband's help and with frequent breaks. (AR 39-40). She clarified that there is not much laundry, since there are only three

of them in the house. (AR 45). Claimant testified that she does not go grocery shopping alone. (AR 40). She stated that she has no problems caring for her personal hygiene and dressing herself, and can grab things with her hands. (AR 41). According to Claimant, she does not see her friends, but stays home and occasionally enjoys cross- stitching. (AR 41).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision to deny benefits, made through an ALJ, when the decision is based on the proper legal standards and is supported by substantial evidence. Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is more than a mere scintilla but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989) (quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Webb, 433 F.3d at 686, citing Richardson v. Perales, 402 U.S. 389, 401 (1971). Moreover, such "inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" are accorded the same consideration as is substantial evidence as defined above. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quotation and citation omitted).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that would support a finding of either disability or non-disability, the Commissioner's decision is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

///

///

**RELEVANT LEGAL FRAMEWORK**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

**Sequential Evaluation Process**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520. Step one determines if claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. § 404.1520(b). If he is not, the decision maker proceeds to step two, at which point the decision maker determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c).

If a claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to step three, which requires the decision maker to compare claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d)); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, the claimant conclusively is presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to step four, at which point it must be determined whether the impairment prevents the claimant from performing past work. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age,

///

5

education and work experience. 20 C.F.R. § 404.1520(f). See Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a prima facie case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics in original). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984). The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which the claimant can perform. Kail, 722 F.2d at 1498.

## ADMINISTRATIVE FINDINGS

The ALJ found at step one that Claimant "has not engaged in substantial gainful activity since her alleged onset date." (AR 15, 20). At step two, the ALJ determined that Claimant had severe impairments, which included low back pain following her laminotomy and removal of the L5-L6 disk [discectomy][3]; exploration and foraminotomy[4] of S1, L5, and L6 nerve roots, and "episodic headaches." (Id.). At step three, the ALJ assessed whether Claimant's impairments were among those acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments). The ALJ concluded that Claimant's medically determinable impairments did not meet or equal a listed impairment, including Listing 1.04 (spine disorders). (AR 17, 20). The ALJ specifically noted that he found Claimant's

---

[3] A laminotomy is a minimally invasive procedure performed when an individual has a disc rupture in the lumbar spine that puts pressure on the nerve roots. The pressure may causes symptoms, including neck, arm, and leg pain. The laminotomy involves removing part of the bony covering of the nerve root. At the same time, the removal of a portion of the disc ("discectomy") often is performed to remove the pressure off of the nerve root.

[4] A foraminotomy is a surgical procedure that is performed to enlarge the passageway where a spinal nerve root exits the spinal canal.

6

allegations that she suffered severe pain and disabling symptoms not wholly credible given, <u>inter alia</u>, the medical records evidencing that she has a mild disk protrusion, the lack of evidence that her doctors contemplated future surgeries, Claimant's contradictory reports to various doctors, her daily activities, and her refusal to follow her doctors' instructions and attend courses for chronic pain management and lose weight.  (AR 17-18, 20).

At step four, the ALJ found that Claimant was not able to perform her past relevant work and had no transferable work skills.  (AR 18-19, 20).  After determining that Claimant had the residual functional capacity ("RFC") to do light work, in that she could lift and carry ten pounds frequently and twenty pounds occasionally,  to stand, walk, and sit six hours in an eight-hour workday, but limited to occasional climbing, stooping, kneeling, crouching, crawling, and never climbing ropes, scaffolds, or ladders, the ALJ noted that Claimant is a younger individual with a high school education. (AR 18-19).  Accordingly, at step five, the ALJ found that, given an exertional capacity for light work, and given Claimant's age, education and work experience, a conclusion of "not disabled" would be directed under Rule 202.11 of the Medical-Vocational Guidelines ("the Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2.  (AR 20-21).

## ISSUES

Claimant asserts that the Commissioner erred as a matter of law.  Claimant alleges that:

A.  The ALJ erroneously ignored the opinion of treating physician Olusegun Leramo, M.D.;

B.  The ALJ improperly found Claimant's testimony not credible.

As discussed above, this Court must uphold the Commissioner's determination that a claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**A.      Failure to Assess Dr. Leramo's opinion**

Plaintiff asserts that the ALJ erred when, in determining her RFC, he found that none of her treating physicians had mentioned any restrictions or limitations, pointing out that Dr. Leramo, her long-time treating physician, had stated, on November 16, 2004, that Plaintiff's pain precluded her from performing even sedentary work.  (Doc. 12, p. 4).  Plaintiff noted that Dr. Leramo's limitations

were much more restrictive than those of examining consultant Scott Selco, M.D., who had seen Plaintiff only once and admittedly lacked the opportunity to review all of her medical records. (Id. at 4-6). In addition, Plaintiff contends that both the medical records and the limited results of the Dr. Selco's report support Dr. Leramo's opinion, which should be accorded more weight given that he was the treating physician. (Id. at 6-7). Moreover, Plaintiff avers that the ALJ erred in failing to provided specific and legitimate reasons for ignoring Dr. Leramo's opinion. (Id. at 6). The Commissioner responded that there was no error because the records did not support Dr. Leramo's opinion. (Doc. 13, pp. 8-11). Plaintiff replies, inter alia, that, the ALJ failure to provide any reason, much less a "specific and legitimate rationale," for rejecting a treating physician's opinion, necessitates a remand. (Doc. 14, p. 4).

With the permission of the ALJ, Dr. Leramo's completed "physical capacities evaluation" and questionnaire were submitted, purportedly for ALJ Ross's consideration, on November 16, 2007. (AR 46-47, 236-237). These documents constitute the opinion, or "medical source statement" that Plaintiff contends the ALJ improperly assessed. (Doc. 12, p. 4). Dr. Leramo's form RFC assessment (the "physical capacities evaluation"), restricted Plaintiff from most exertional activities, other than lifting or carrying less than five pounds, pushing and pulling arm controls, and engaging in fine manipulation or simple grasping. (AR 236). In response to the questionnaire, Dr. Leramo opined that Plaintiff's medical problems precluded her from performing even sedentary work and identified that her primary impairments were chronic low back pain and left leg pain. (AR 237). He reported that Plaintiff had "lie down or elevate [her] legs" for several hours in an eight-hour day. (Id.).

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). As a general rule, a treating physician's opinion is given special weight because of his or her familiarity with a claimant's physical condition. Id.; Fair v. Bowen, 885 F.2d 597, 604-605 (9th Cir. 1989); see also Smolen v. Chater, 80 F. 3d 1273, 1285 (9th Cir. 1996) ("Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other

physicians"); SSR 96-2p, 1996 WL 374188, *1 (July 2, 1996) (the opinions of a treating physician ordinarily should be given great weight).

Regardless of the weight given to a treating physician's medical opinion, it is not binding on the ALJ with respect to the ultimate determination of disability. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-1195 (9th Cir. 2004) (treating physician had opined that claimant "met or equaled the criteria" for a listed impairment under 20 C.F.R. § 404 Subpt. P App. 1, § 105C); Magallanes v. Bowen, 881 F. 2d 747, 751 (9th Cir. 1989) ("treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability"). Accordingly, although entitled to great weight, a treating physician's opinion is not conclusive and may be rejected by the ALJ under appropriate circumstances. Where a treating physician's opinion is not contradicted by another physician, it may be rejected by the ALJ only for "clear and convincing" reasons supported by substantial evidence in the record. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). Where a treating physician's opinion is contradicted by another physician, the ALJ may reject the treating physician's opinion only by providing "specific and legitimate reasons supported by substantial evidence in the record for so doing." Id. (citation and quotation omitted). The same test applies to examining physicians: the ALJ must give clear and convincing reasons for rejecting uncontradicted opinions, or "specific and legitimate reasons supported by substantial evidence in the record" for rejecting those opinions that have been contradicted. Lester v. Charter, 81 F.3d 821, 830-831 (9th Cir. 1995).

Courts within the Ninth Circuit have recognized various reasons deemed sufficient for the ALJ to disregard a treating or examining physician's opinion. These reasons include: conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for physicians' reports that are based substantially on the claimant's subjective complaints of pain. Flaten v. Sec'y of Health & Human Svcs., 44 F.3d at 1453, 1463-1464; Fair, 885 F.2d at 604. The ALJ also may disregard a physician's opinion that is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986) (brackets added). In contrast, vague, broad, or generalized reasons are insufficient grounds for the ALJ to reject a treating physician's opinion.

McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). See Orn v. Astrue, No. 05-16181, 2007 WL 2034287, *4-*6 (9th Cir. July 16, 2007) (discussing in detail the weight to afford a treating physician's opinion and adequate reasons for accepting consultants' reports over those of treating physicians, and further holding that, even if not given controlling weight, a treating physician's opinion should be accorded deference).

Here, ALJ Ross did not acknowledge Dr. Leramo's assessment at all. (AR 15-18). To the extent that there was any reference to it, the ALJ reported in his decision that "claimant testified Dr. Leramo advised her to stop work, but this is undocumented. No treating or examining physician has noted any physical limitations or restrictions." (AR 18). Although the ALJ's statement during the hearing that Dr. Leramo's documents should be submitted as soon as received by Plaintiff only implied that they would be considered in rendering a decision, if ALJ Ross were not going to consider them, he should not have mentioned that they be sent to him. Despite the dearth of case law on this particular aspect of the issue, the undersigned believes that the ambiguity with respect to the ALJ's statement regarding the acceptance and consideration of Dr. Leramo's RFC and questionnaire alone mandates a remand. While it is feasible that ALJ Ross was not aware that Dr. Leramo's paperwork had arrived, the law requires that the ALJ cite specific and legitimate reason for discounting a treating physician's opinion. See Reddick, 157 F.3d at 725 (the ALJ may reject the treating physician's contradicted opinion only by providing "specific and legitimate reasons supported by substantial evidence in the record for so doing.") (citation and quotation omitted). The record evidence indicates that Dr. Leramo's opinion had been sent via facsimile to Dr. Ross on November 16, 2007. (AR 236-38). Thus, the ALJ's failure to mention Dr. Leramo's opinion cannot be construed as specific, legitimate reasons, supported by the record, for discounting the opinion. Reddick, 157 F.3d at 725; (AR 15-18). Accordingly, there is no need to delve further into whether the doctor's assessment is supported by the medical records before recommending that the case be remanded to the Commissioner for further consideration.

**B.     Plaintiff's Credibility**

Plaintiff alleges that the ALJ improperly concluded that her subjective testimony was not credible despite the objective records evidencing that her impairments could cause the pain and

limitations that she suffered. (Doc. 12, pp. 7-8). Plaintiff further contends that the ALJ neglected to provide the requisite "clear and convincing rationale" for rejecting her testimony. (Id. at 8). Moreover, Plaintiff asserts that ALJ Ross not only misstated her testimony, but erroneously found that her daily activities demonstrated that she was capable of performing a job. (Id. at 8-9).

A two step analysis applies at the administrative level when considering a claimant's subjective credibility. Smolen v. Chater, 80 F.3d at 1281. First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom. Id. at 1281-1282. If claimant satisfies this test – and if there is no evidence of malingering – the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." Id. at 1281. This level of specificity is crucial because, in its absence, effective judicial review may not be possible. See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

In discounting the claimant's credibility, the ALJ cannot rely solely on the objective medical evidence, but "must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between [the claimant's] testimony and his own conduct, or on internal contradictions in that testimony."). Robbins v. Social Sec. Admin., 466 F.3d 880, 884 (9th Cir. 2006)(citations and quotations omitted). In addition, the ALJ must discuss his reasons for rejecting each of the symptoms concerning which the claimant testified. Connet v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

When assessing the credibility of a claimant's testimony, SSR 96-7p directs the ALJ to consider not only objective medical evidence, but also the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) factors that precipitate or aggravate the symptoms; (4) the effectiveness and adverse side effects

of prescribed medications; (5) other treatments for the relief pain and symptoms; (6) any other measures used by the individual to relieve the pain and symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions resulting from pain or other symptoms. SSR 96-7p.[5] With respect to the claimant's activities of daily living, this Circuit has held that, unless the claimant spends a significant portion of the day engaging in physical activities that are transferable to a work setting, as supported by the evidence and discussed in the ALJ's decision, it cannot form the basis for an adverse credibility finding. Orn v. Astrue, No. 05-16181, 2007 WL 2034287, *12-13 (9th Cir. July 16, 2007), citing Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001), Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

Here, ALJ Ross first set forth a brief synopsis of Claimant's medical history, summarizing records provided from her treating physicians, examining consultants, and non-examining DDS physicians. (AR 16-17). ALJ Ross found that Claimant suffered severe impairments, and did not suggest that she was malingering. (AR 16, 20). The ALJ, therefore, had to provide specific, clear and convincing reasons – supported by substantial evidence – for discounting Claimant's subjective complaints and related limitations, applying the standards outlined above. Orn, No. 05-16181, 2007 WL 2034287, *9-11; Smolen, 80 F.3d at 1281-82.

The ALJ first concluded that Plaintiff's testimony was not supported by the medical records "and other evidence based on . . . Social Security Ruling 96-7p." (AR 17). He then discussed her "fairly normal" activities of daily living, and found that they were consistent with work-related activity. (Id.). In rendering this finding, the ALJ reiterated Plaintiff's testimony as follows:

> The claimant testified she cannot work due to numbness of her left leg. She alleged loss of feeling from her waist down into her legs and toes. She described her leg as very weak and shaky. . . . Claimant alleged she cannot walk more than 15 minutes because her leg trembles. She stated she cannot sit without leaning to relieve pressure on the left side, but did not specifically describe how long she can sit when asked. She alleged she cannot lift more than five pounds. Claimant cannot kneel or squat without pain. She is prescribed various pain medications, including Darvocet which she takes three times a day. She rated her pain a 7 on a 1 – 10 intensity scale. Claimant does not use a cane or crutches to walk. She lies down and elevates her legs, which reduces her leg pain. She grocery shops, cooks, washes dishes and does about two loads of laundry per week. Claimant also cross stitches. She can independently perform her personal

---

[5] Social Security Rulings do not have the force and effect of the law, but they are binding on "all components of the Social Security Administration." Orn v. Astrue, No. 05-16181, 2007 WL 2034287, *9 (9th Cir. July 16, 2007) (citations and quotations omitted). Moreover, an ALJ's decision to reject the claimant's testimony cannot be upheld if it does not comply with the Social Security Rulings. Id.

12

hygiene and grooming. Claimant has a six year old daughter in school.
(AR 17).

Contrary to the ALJ's summation, Plaintiff testified that she could sit for fifteen minutes, adding that she alternated between standing, sitting, walking, and laying down. (AR 39). Moreover, although Plaintiff acknowledged that she shopped for groceries, she testified that she never went by herself, and her husband did some of the housework. (AR 40, 45). She further stated that she took frequent breaks when doing her limited chores. (AR 39). The ALJ acknowledged that Plaintiff took various medications and, despite testimony about the side effects – especially the fatigue and falling asleep without realizing it – ALJ Ross did not factor any side effects into his assessment of Plaintiff's ability to work an eight hour day. (AR 17-18, 37-38, 44-46). Nor did ALJ question Plaintiff about what was involved in her care for her six-year-old daughter when she was not attending school, but concluded that Plaintiff's ability to care for a six-year old,[6] combined with the activities he reported that she testified performing on a regular basis, was sufficient to find her capable of working. (See AR 18, 42-47).

Given the nature and extent of Plaintiff's activities, as reported, they were not sufficiently related to Plaintiff's ability to perform work on a sustained basis to deem her capable of working. Vertigan v. Halter, 260 F.3d 1044, 1049-1055 (9th Cir. 2001). Moreover, the ALJ failed to consider some of the important factors, such as the side effects of Plaintiff's medication, although he was required to do so pursuant to SSR 96-7p. Further, the ALJ appears to have selectively chosen the testimony regarding Plaintiff's activities that he would include in his credibility findings, given that he included some symptoms about which Plaintiff did not testify, and minimized or excluded those that she reported, such as her ability to sit only fifteen minutes. (Compare AR 17-18 with AR 32-46).

Because the ALJ's findings that Plaintiff's daily activities demonstrated that she could "spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions," that presumably would be transferable to the work place are based on an incomplete analysis of the

---

[6] Plaintiff did testify that her daughter was a "handful," which is an ambiguous phrase and, without more, does not provide evidence that Plaintiff chased after her or did anything that she testified she was incapable of doing thereby making her testimony internally inconsistent and contradictory. (AR 45).

1 reported activities and a complete exclusion of other factors, such as the side effects of her
2 medications, the ALJ's conclusion that Plaintiff's testimony was not credible does not comply with
3 the requisite law. Orn, No. 05-16181, 2007 WL 2034287, *12-14. Thus, given that the ALJ
4 misconstrued the testimony and misapplied the law, his credibility findings are not supported by
5 clear and convincing evidence, and cannot be upheld.

## **CONCLUSION AND RECOMMENDATIONS**

7 For the reasons discussed above, this Court finds that the ALJ erred in failing to consider the opinion of Plaintiff's treating physician and in his legal and factual analysis of Plaintiff's subjective testimony. This Court further finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court RECOMMENDS:

12  1. Plaintiff's social security complaint BE GRANTED, and

13  2. The matter BE REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with these Findings and Recommendations, of Plaintiff's residual functional capacity, in conjunction with the opinion of her treating physician; and whether Plaintiff's testimony, including her daily activities, side-effects from her medication, and other factors referenced in these Findings and Recommendations, are credible and support a finding that she could perform a gainful and substantial job within the national economy, and

19  3. Judgment BE ENTERED for Plaintiff Eunice Alcazar and against Defendant Michael J. Astrue.

21 These Findings and Recommendations are submitted to the United States District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. No later than fifteen (15) days after service of these Findings and Recommendations, any party may file written objections to these Findings and Recommendations with the Court and serve a copy on all parties and the Magistrate Judge and otherwise in compliance with this Court's Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Responses to objections shall be filed and served no later than fifteen (15) days after filing of the objections and otherwise in compliance with this Court's Local Rule 72-

304(d).  A copy of these responses shall be served on the Magistrate Judge.  The District Judge will review the Findings and Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 9, 2007**                                          **/s/ Theresa A. Goldner**
                                                                     UNITED STATES MAGISTRATE JUDGE